IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **PILGRIM'S PRIDE CORPORATION** § | |
| § | |
| **Plaintiff** § | |
| § | |
| vs. § | **CASE NO. 206-CV-80** |
| § | |
| **ASFI, INC.** § | |
| § | |
| **Defendant** § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant ASFI, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) (Docket No. 9). Having considered the parties' written and oral arguments, and as announced at the motion hearing, the Court **GRANTS** the motion.

**BACKGROUND**

Pilgrim's Pride Corporation is a poultry processing company. Although Pilgrim's Pride is a Delaware corporation and does business throughout the country, it maintains a corporate office in Pittsburg, Texas. ASFI is a Pennsylvania corporation that purchases and co-packs products from different facilities for sale to large retail chains. ASFI does not do business throughout the country and does not do business in Texas.

In early July 2004, ASFI faxed Pilgrim's Pride's Pittsburg office a credit application. Soon after, Pilgrim's Pride sent a letter from its Pittsburg office to ASFI reflecting approval of ASFI's credit application. This credit account allowed ASFI to purchase chicken from Pilgrim's Pride for the purpose of packaging it for resale. Pilgrim's Pride brings this suit claiming ASFI has failed to

1

pay Pilgrim's Pride.

ASFI moves the Court to dismiss this suit, arguing that it does not have sufficient minimum contacts with Texas to establish personal jurisdiction. ASFI claims that it submitted the credit application to Pilgrim's Pride at the behest of an Arkansas broker, A&D Sales. Once its credit line with Pilgrim's Pride was established, ASFI directed its orders to A&D in Arkansas. Payments were to be remitted to Pilgrim's Pride's offices in Atlanta, Georgia. The chicken ASFI received from Pilgrim's Pride came from West Virginia. Pilgrim's Pride argues that the two facsimiles—the credit application and the approval letter—are sufficient minimum contacts to establish personal jurisdiction over ASFI becuase they created an on-going relationship with Pilgrim's Pride. Pilgrim's Pride also contends that the only payment ASFI made on the account was sent to Texas. ASFI says it sent the check to Texas, rather than Georgia, at Pilgrim's Pride's insistence.

## APPLICABLE LAW

**Standard of Review**

When a court does not conduct an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must present sufficient facts to make out a prima facie case for the exercise of jurisdiction over the nonresident defendant. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). A court must accept as true all uncontroverted allegations in the plaintiff's complaint, and it must resolve all factual conflicts in the parties' affidavits in favor of the plaintiff. *Id*. After a plaintiff makes a prima facie case of jurisdiction, the burden shifts to the defendant to present a "compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

**Personal Jurisdiction**

Whether the Court has personal jurisdiction over ASFI depends on whether personal jurisdiction lies under the Texas long-arm statute and the Due Process Clause of the U.S. Constitution. *Alpine View*, 205 F.3d at 214. The Texas long-arm statute extends the reach of personal jurisdiction to the limits of the Due Process Clause. *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE § 17.042. Thus, Texas courts have personal jurisdiction over a nonresident defendant if the defendant purposefully availed itself of the state's benefits and protections "by establishing 'minimum contacts'" with Texas and if the "exercise of jurisdiction over the nonresident . . . defendant [does] not offend 'traditional notions of fair play and substantial justice.'" *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) and *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

*1. Minimum Contacts*

When a plaintiff's alleged injuries arise out of or relate to the defendant's minimum contacts, those contacts sufficiently support the exercise of specific jurisdiction over that defendant. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). Analysis of minimum contacts is not mechanical and quantitative; rather, it requires the Court to consider the quality and nature of the defendant's activities and the totality of the circumstances to determine whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate" and could reasonably anticipate being haled into court in the forum state. *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (declaring that the purposeful-availment inquiry is a totality-of-the-circumstances test).

A forum cannot exercise personal jurisdiction over an out-of-state defendant merely because

the defendant contracted with a plaintiff that resides in the forum. *See Electrosource Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). To evaluate purposeful availment, courts look to such factors as the places of negotiation, contracting, performance, delivery and payment, the place where title to any goods would pass, and the contract's choice-of-law clause, if any exists. *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068-69 (5th Cir. 1992); *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 n.2 (5th Cir. 1982). The place of performance in particular is a "weighty consideration," even though it is not "automatically determinative" of personal jurisdiction. *See Electrosource, Inc.*, 176 F.3d at 874; *Command-Aire Corp.*, 963 F.2d at 94; *c.f. Holt Oil*, 801 F.2d at 778 (finding that Texas courts had no specific jurisdiction when all material performance under a contract occurred outside of Texas). However, a plaintiff's totally unilateral decision to perform its part of the contract in the forum state diminishes this factor's weight. *Command-Aire Corp.*, 963 F.2d at 94.

### *2. Traditional Notions of Fair Play and Substantial Justice*

If the defendant has sufficient minimum contacts with Texas, the burden shifts to the defendant to make a "compelling case" that exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Wien Air*, 195 F.3d at 215. In analyzing the defendant's showing, a court considers and balances: (1) the defendant's burden in having to litigate in the forum state; (2) the forum state's interest in adjudicating the suit; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the forum state's shared interest in furthering fundamental social policies. *Rushton Gas Turbines, Inc.*

*v. Donaldson*, *Inc.*, 9 F.3d 415, 421 (5th. Cir. 1993); *see also Asahi*, 480 U.S. at 113.

## ANALYSIS

The Court looks to the totality of the circumstances to determine whether ASFI has sufficient minimum contacts with Texas for the Court to exercise personal jurisdiction over ASFI. At most, Pilgrim's Pride contends ASFI had three contacts with Texas—sending the credit application, receiving the approval letter, and directing a single payment to Texas. The nature of the parties' relationship is relatively simple—Pilgrim's Pride sold chicken to ASFI on credit. However, they dispute when a contractual relationship arose. Pilgrim's Pride contends the extension of credit created the relationship. ASFI argues it had no obligation to Pilgrim's Pride until the chicken was delivered. The credit application did not contain a choice of law or venue clause.

ASFI was located in Pennsylvania when the negotiating and contracting occurred. Pilgrim's Pride was located in Texas during the negotiating and contracting, though it also had offices in Georgia. Pilgrim's Pride contends that it extended credit to ASFI in Texas, but the location of the "credit" is an intangible concept compared to the places of delivery and payment and given Pilgrim's Pride's multiple office locations.

Although ASFI did fax the credit application to Texas and did remit one payment to Texas, the essence of the parties' relationship was not centered in Texas. ASFI did not order the chicken from Pilgrim's Pride's Texas office. Rather, ASFI placed its orders through a third-party broker, who in turn placed the orders with Pilgrim Pride. ASFI presumed those orders were placed with the Atlanta, Georgia Pilgrim's Pride office, where ASFI was to remit payment. The chicken ASFI received did not come from Texas; it came from West Virginia. ASFI was supposed to remit its payment to Pilgrim's Pride's Atlanta office. From ASFI's perspective, the vast majority of its

contacts with Pilgrim's Pride were in West Virginia and Georgia.

This situation is factually dissimilar from that in *Marathon Metallic Building Co. v. Mountain Empire Construction Co.*, 653 F.2d 921 (5th Cir. 1981), in which the Fifth Circuit found that a surety relationship between a Texas company and a Colorado company involved sufficient contacts for the Texas court to have personal jurisdiction over the Colorado defendant. In that case, the surety agreement provided for delivery of goods f.o.b. Houston, Texas and for Texas law to govern both the construction and performance of the agreement. *Id.* at 922. The out-of-state defendant "entered into credit transactions with the Texas entity, purchasing merchandise and taking title in Texas." *Id.* at 923. Thus, that surety agreement created reasonably foreseeable business activity in the forum state. *Id.* Here, the agreement did not include a choice of law clause, the goods were not shipped from Texas, title did not pass in Texas, and payment was not supposed to be made to Texas. Although the credit application was sent to Texas, the parties' relationship did not cause reasonably foreseeable business activity in Texas.

ASFI's tenuous relationship with Texas appears to be a result of the Pilgrim's Pride's unilateral contacts with Texas. The goods purchased on credit did not come from Texas. Payment was not supposed to be made to Texas. ASFI's contacts with Texas were not such that ASFI should have reasonably anticipated being haled into court here. Accordingly, the Court does not reach the issue of whether forcing ASFI to litigate here would offend traditional notions of fair play and substantial justice.

## CONCLUSION

For the reasons stated, ASFI does not have sufficient minimum contacts with the state of Texas for this Court to exercise personal jurisdiction over ASFI. Accordingly, the Court **GRANTS**

the motion to dismiss.

**So ORDERED and SIGNED this 13th day of April, 2006.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**